Dimitry Kirsanov
Pro Se Creditor
United States of America
dimitry.kirsanov@protonmail.com
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, et al., 1 | ) | Bankruptcy Case # 22-10964 |
| | ) | |
| Post-Effective Date Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | District Appeal # 1:24-cv-05201 |
| | ) | |
| | ) | |

_____

<u>DIMITRY KIRSANOV'S APPELLANT BRIEF INFORMING DISTRICT COURT OF ISSUES</u>

# **Preliminary Statement**

Celsius is a fraudulent company, as over 600,000 thousand creditors have learned throughout this Bankruptcy process. Unfortunately, this fraud continued to emanate throughout the Bankruptcy process. Celsius solicited and obtained many orders which were contradictory to their own actions, intentionally confusing, and at times, violating the Constitution, while claiming it was legitimate and sound. Precedent has been failed to be followed, and Celsius hid the ball from the Bankruptcy Judge, creditors, and the public. Many times, Celsius contravened many of its own solicited orders, at the expense of creditors, and at the cost of integrity to the judiciary machine. To date, numerous topics have not been directly addressed, leaving extreme prejudice to the Estate.

This appeal addresses many of those topics, which have been ignored, re-interpreted, and otherwise conformed to suit the best interest of the company which originally put so many creditors in this predicament, violating many of the liberties that have been bestowed by the Constitution. Specifically, these related issues affected approximately 88 "Pure Custody" creditors, along with approximately 3,212 Custody holders, many of which do not know they are victims.

# I.

### The Bankruptcy Court Erred in not detecting and addressing
### Fabricated Evidence, contravening Court Order

1. On 8/17/23, around 12:08 PM prevailing eastern time, Celsius filed it's fourth notice of filing of revised disclosure statement. ECF#3332.

2. On 8/17/23, around 14:47 PM prevailing eastern time, Judge Glenn entered an order approving the disclosure statement, along with the voting procedures. ECF#3337

3. The Court order indicated several critical points as it relates to this appeal.

  3a. The voting record date, as the dates for determining classes, was July 24, 2023. Page 4.

  3b. The Plan Supplement Filing deadline, was September 8th, 2023. Page 4.

  3c. The Plan Objection deadline, September 22, 2023. Page 11.

  3d. Confirmation Brief deadline, September 29, 2023. Page 11.

  3e. Account Holder Claims Calculation, Page 111.

  3e. CEL Token Settlement, Page 116

  Subsequent Attachment Pages (3337-1)

  3f. Voting and Ballot Tabulation Procedures, Page 9.

4. Ballots were issued to account holders, and voted on. Each claim was calculated in US Dollars pursuant to the Court order, and followed the CEL Token Settlement (see F, Page 10)

5. All Custody Holders obtained ballots with a petition day prices of 0.81 cents, as solicited by Celsius and ordered by the Court. All other account holders obtained 0.25 cents.

6. In a contravention to the Court's order directing 0.81 cents to the Custody class in both ballots and tabulation results, Celsius modified the tabulation results, forcing a 0.25 cent valuation on the Custody Class. This was present on both original and amended declaration of Brian Karpuk (ECF#3560, ECF#3574)

7. In my questioning of the Mr. Karpuk asking him who provided directive to modify the Bankruptcy Date Valuations, my question was objected to and sustained by the Court. See Transcript ECF#3881, Page 403-404.

8. The Court indicated it did not understand my questions, and the documents say what they say. See Transcript ECF#3881, Page 405.

<u>Discussion on the Fabricated Balloting Evidence</u>

In the Bankruptcy Court's memorandum opinion (ECF #4941), the Court indicates "For the avoidance of doubt: no CEL Token, anywhere in the Plan, any settlement, or any distribution mechanism receives an $0.81 valuation. This treatment is not fraud, but a result of the Court's rulings".

The Bankruptcy Court erred in this, as the voting the Court ordered and the ballots provided to Custody Class creditors, was 0.81 cents. Only *after* the debtors received the results, the tabulation prices (in contravention to Court order on balloting *and* tabulation), changed the Custody Class from 0.81 cents 0.25 cents. It was impossible to timely object to the tabulation modifications, as the tabulation results were altered far after the objection deadline, less than a week before trial. In opening statements, I attempted to be heard as it relates to "balloting valuation issues", among other issues, but the Court did not allow me to be heard. However, the Court indicated it did not preclude me from asking questions.

(See ECF #3881, Page 166 --
KIRSANOV: Good afternoon, Your Honor. Dimitry Kirsanov, pro se creditor. I was not listed on the objections and I have concerns that involve best interest and adverse amendments to the plan after the vote, ballot valuation issues, and continued lack of clarity regarding CEL valuation and custody in Hawaii. I was wondering if I could be heard today.

The Court: Not in an opening statement. I made clear that the opening statements request had to be filed by the deadlines that I gave. I've heard everyone. I respected the time request that everyone had made. I'm not going to reopen -- this doesn't preclude you -- let me make clear. This does not preclude you from examining witnesses on these issues. The only thing that I did was fix a specific date and time as a deadline for requests for  opening statements.

Accordingly, it was impossible to object to the tabulation. I, and other similarly situated creditors did not have adequate notice or time to prepare for this change.

## II

## <u>The Bankruptcy Court erred in allowing a material Plan Supplement after the deadline that assigned 0.25 cents to the Custody Class</u>

1. In ECF #3337 approving and establishing certain guidelines of the plan, the Court established that the Plan Supplement Filing Deadline shall be September 8, 2023, as the deadline that the debtors must file the Plan Supplement. See Page 4.

2. In a contravention to this, the debtors filed **three** plan supplements prior to trial and after this deadline, and **two** more during trial. See ECF#3483, dated 9/15/23, ECF#3550, dated 9/23/23, ECF#3583, dated 9/27/23, ECF#3869, dated 10/20/23, ECF#3935, dated 10/30/23)

3. In ECF#3577, the modification after balloting and two days after the tabulation results and less than a week before trial, Celsius added a line indicating that the Custody Class was no longer exempt, changing the 0.81 cents to 0.25 cents.

"Nonwithstanding anything to the contrary herein excepting Custody Claims from the CEL Token Settlement, the Deactivation Date Cryptocurrency Conversion Table shall provide that CEL Token is priced at $0.25 if the Bankruptcy Court approves the CEL Token Settlement, or such other amount as ordered by the Bankruptcy Court. For the avoidance of doubt, following the Deactivation Date, such Claims shall be subject to further conversions pursuant to any applicable Distribution Cryptocurrency Conversion Table in connection with subsequent distributions."

## <u>Discussion on the Monetary Assignment to the Custody Class</u>

Celsius assigned a price of 0.25 cents to the Custody class, but only *after* the plan supplement deadline and less than a week before trial, and two days after they had contravened a Court order indicating ballots and tabulation was to be 0.81 cents.  In the same change, the admission is clear: "herein *excepting* Custody Claims from the CEL Token Settlement"

I had such a Custody Claim, and the CEL monetary majority of the voting class. The voted ballots indeed showed 0.81 cents for Custody, but not the tabulation results. This material assignment contravening the exemption after the voting, less than a week before trial. If Custody Claims were to not be exempted on the voted on plan, then it should have been assigned with notice to the affected parties to timely object and have a fair fight.

The Bankruptcy Court ignored and did not address this change which contravened it's own case guidelines and orders exempting the Custody Class.

# III

## The Bankruptcy Court ignored the application of "Any" in distribution to affected Custody Creditors

1. In Celsius' motion to allow withdrawals to allow withdrawals on certain assets held in Custody, Celsius admits there are approximately 88 creditors with Pure Custody and an Outstanding Obligation (which I fell under) #ECF 670, Page 7 footnote. My CEL Token, along with my other funds, were "Pure Custody"
2. The Court Approved the Custody Settlement on 3/21/23. ECF#2291
2. I entered the Custody Settlement as one of these 88 creditors. In the Custody Settlement, the language indicates:

"For the avoidance of any doubt, any Holder of an Allowed Custody Claim that abstains from voting or votes to reject the Plan and has only Pure Custody Assets or Transferred Custody Assets, but was prevented from receiving his or her Custody Assets under the Withdrawal Order as a result of an outstanding obligation owed to the Debtors through the Debtors' Borrow Program, shall receive his or her Custody Assets in accordance with the treatment of allowed Deposit Claims under the Plan and otherwise consistent with the Court's findings in the Withdrawal Order.

3. In the Court's Memorandum Opinion, the Court indicated it was not referencing to Settling Custody Account Holders, and effectively re-wrote the definition of "Any". See ECF#4941, Page 16.

4.  The Custody Settlement had the language of Non-Settling Custody Account Holders already. See ECF#2291 attachment Page 6.

5. The Plan was Amended on September 27, 2023, after solicitation. On this Amendment (See ECF#3577), on Page 136, voting instructions were modified. On Class 6B ("Pure Custody"), the following instructions were added:

22-10964-mg    Doc 3577    Filed 09/27/23    Entered 09/27/23 11:25:05    Main Document
Pg 136 of 193

> (c)    *Voting*: Class 6A is Impaired under the Plan.  Holders of General Custody Claims are entitled to vote to accept or reject the Plan.
>
> 6B.    Class 6B —Withdrawable Custody Claims.
>
> (a)    *Classification*: Class 6B consists of all Withdrawable Custody Claims.
>
> (b)    *Treatment*:  Each Holder of an Allowed Withdrawable Custody Claim that is not an Equitably Subordinated Claim shall be permitted to withdraw such Holder's Cryptocurrency in accordance with the Custody Withdrawal Order.  For the avoidance of doubt, any Holder of an Allowed Withdrawable Custody Claim that also has an outstanding Retail Advance Obligation is also eligible to withdraw such Holder's Cryptocurrency associated with the applicable Allowed Withdrawable Custody Claim commencing on the Confirmation Date.

"For the avoidance of doubt, any Holder of an Allowed Withdrawable Custody Claim that also has an outstanding Retail Advance Obligation is also eligible to withdraw such Holder's Cryptocurrency associated with the applicable Allowed Withdrawable Custody Claim commencing on the Confirmation Date. "


### Discussion on "Any"

The application of "Any" is one, many, or all. A 6A claim could had "Pure Custody" funds that were impaired due to any outstanding obligation, while at the same time not having any exposure to clawbacks (As my preference exposure was zero), as indicated by Celsius' own initial motion, indicating these 88 creditors along with their rights to reject the plan in the Custody Settlement.


Celsius chose to not clarify this until after they saw the tabulation results, where they changed the definition of the 6B class to include these 88 creditors, which were actually 6A but able to reject.

The Bankruptcy Court confirmed I was 6A, as was manifestly evident in the tabulation results. Had I not had the monetary majority to prove I voted the way I did, these 88 creditors would of gone quietly, with their right to reject stripped away after balloting.

# IV

### The Bankruptcy Court erred in accepting reinterpreted
### tabulated results and adjusted voting classes

1. Pursuant to the Custody Settlement, the right for *any* holder of an allowed custody claim – 6A, or the 88 creditors that were impaired with Pure Custody to vote to reject was present. The same notation was added to the Plan under 6B instructions after solicitation and voting results, stripping the notation of "votes to reject" to these 88 creditors.

2.  The tabulation results, manifestly show my rejection vote.

3. The Declarations of Brian Karpuk, indicate that applicable votes were tabulated to accept. See ECF#3560 and #3574, Page 13, Section 27.

4. In testimony, Brian Karpuk confirmed the CEL Token Holders in CEL Monetary Majority voted to reject. See Transcript ECF#3881, Page 404.

MR. KIRSAKOV: I will ask the witness to open Page 4 to review the General Custody Claims. It appears that a significant portion of the CEL custody class have rejected the CEL Token settlement. Can you confirm that's accurate?

MR. KARPUK: By dollar amount, yes, 64 percent of the CEL Token holders in Class A voted to reject. Although by count, 97 percent voted to accept.

5. The debtors ignored and reinterpreted the balloting results, and the Court accepted it as such. See ECF#4046, Page 3

"Rather, Debtors explained in painstaking detail why Mr. Kirsanov's vote in Class 6B was deemed to accept, "regardless of whether it was shown as an accept or reject" on the ballot. (Response ¶ 24.) There is no question that Class 6B was unimpaired and thus deemed to accept; the balloting results reflect the votes that Account Holders in that Class attempted to make, but for purposes of the Plan, were counted as acceptances. Mr. Kirsanov was one such creditor who voted his 6B claims to reject, but was deemed to accept"

**Discussion on the Tabulation and voting classes**

Voting is the foundation of our Republic. It is clear that Celsius acted intentionally to undermine the Bankruptcy process for their own benefit, grossly violating the rights of many creditors. Orders were solicited that ignored the 88 creditors that could vote to reject, including no clear instructions to those that voted. Shockingly, these instructions were only added to the plan after Celsius saw the voting results. The right to reject was stripped in this addition. Furthermore, the contradictions are manifest – Celsius added voting instructions after the tabulation results, which moved these 88 creditors from 6A to 6B, in a wilful act of disenfranchisement. The Bankruptcy Court entered contradictory orders resultant of this.

# V

# The Bankruptcy Court erred in not using it's

# inherent power to investigate fraud, and ignored manifest data

1. The Court did not address the balloting adjustments to the Plan, which contravened it's own deadlines that were solicited by Celsius.

2. The Court did not address the exception clause in the CEL Token Settlement, contravening it's own order for balloting *and* tabulation, which was solicited by Celsius. This evidence was adjusted and fabricated against Court order.

3. The Court ignored manifest contradictions, which stripped and affected creditor rights, by Plan adjustments days before trial.

4. The Court indicated it could have been clearer. This is not permissive, but demanded by the Constitution.

5. Celsius claims I withdrew all my funds. This is a fraudulent statement.

6. The Court ignored that Celsius did not obtain permission to move 500,000 CEL Token prior to confirmation to fulfill their shortfall to my request prior to confirmation.

**Discussion on Fraud**

Fraud is deceptive, and many times, is not able to be detected. I was in a unique position to detect these adjustments to the Plan, which were not consistent with the Constitution and several orders. Here, this fraud stripped away the rights of thousands of creditors, shockingly, days before trial. It involved

the changing of tabulation prices, contrary to Court order, along with changes that went against deadlines and the expectations set forward. Litigants have a duty of full disclosure and honesty with the Court, and Celsius failed to address many of the actions it committed.

A Court has an inherent power to investigate fraud. A debtor-in-possesion can be considered an officer of the Court. In this case, the harm to the integrity of the Judicial process is grave, and extraordinary. The Constitutional Rights were eroded fraudulently. Tabulation was adjusted and reinterepreted. It affected thousands of Creditors. In my personal claim, it affected my conversion by hundreds of thousands of dollars, which translates far more pursuant to the Custody Settlement. There is no statute of limitations for a fraud on the Court claim, and can even be presented to the Court outside of adversarial proceedings. Courts have previously overturned final judgements in Bankruptcy proceedings, years after the Judgement has been entered.

# VI

# <u>The Bankruptcy Court Erred in not permitting remedy for those affected</u>

1. The Bankruptcy Court has indicated it does not have Jurisdiction to Reconsider the Confirmation order.  See Reconsideration denial, ECF#4046, Page #4.
2. The Bankruptcy Court indicated it would Sanction me if I file further motions or adversary proceedings with the Bankruptcy Court.

**Discussion on Remedy**

As the Court indicated it does not have jurisdiction and under the coercion of sanctions for future motions and adversary proceeding filings, I appeal to the District Court to review and discuss an

appropriate remedy. The Court indeed does have jurisdiction to review my claim, as it has for other situations that were not consistent with the voted on Plan. See most recent filing of Celsius' motion to provide additional distributions to affected corporate creditors, ECF#7677.

# VII

# The Bankruptcy Court Erred in indicating I withdrew all my funds, along that my Pure Custody was only eligible for 72.5%, effectively re-writing the shortfall provision, discriminating against similarly situated creditors, when Celsius has admitted to destroying all CEL Tokens

1. I was not eligible to withdraw my funds ahead of confirmation unlike other Pure Custody holders – I was only eligible for part of it, 36%, resultant of my outstanding obligation.

2. No further CEL Tokens were withdrawn.

3. All similarly situated Pure Custody holders received 100%.

4. This ruling was not based on instructions on the voted on plan and settlement. See Plan Adjustments and voting instructions, where the stipulation was added under 6B class after tabulation results.

5. The Shortfall provision indicates the following (ECF 2291, attachment-1, Page 8/43)

In the event that the Debtors have an insufficient amount of certain types of cryptocurrency to make all distributions in-kind to satisfy the Shortfall Issue, the Debtors shall make distributions in alternative cryptocurrencies, which conversion rate shall be determined using the value of the original digital asset as of the Petition Date in U.S. dollars that will be converted into alternative available cryptocurrency based on the value of such digital asset as of the date of entry of the Settlement Approval Order.

10

5. After the Plan was voted on, Celsius indicated they would be destroying all CEL Token in their possession on effective day.  See ECF#3431, Page 6.

"As a result, the Debtors cannot return CEL Token in kind and must assign it some (or no) value, even if they ultimately burn all CEL Tokens in their possession on the Effective Date as they intend."

6. The Committee of Unsecured Creditors, submitted that the debtors cannot return CEL Token. ECF#3432, Page 7.

"CEL Token is a speculative instrument that was issued by the Debtors and which they cannot return."

## Discussion on CEL Token & Pure Custody

Here, after the Plan was approved, the debtors and Committee indicate in their respective briefs that CEL Token cannot be returned. The Court ignored this, and applied the "non-Custody" holder exemption, even though Celsius has destroyed all CEL Tokens in their possession.

Indeed, the Tokens were in possession of Celsius, See voted on plan, ECF#3332, Page 19.

"Finally, the Bankruptcy Court found that, regardless of who owns the assets associated with the Custody Accounts and the Withhold Accounts, the Debtors could maintain possession of those assets pending resolution of any Avoidance Actions."

The conversion is clear. In fact, the change Celsius made on September 27 2023, indicates that CEL Token would be the following -- "For the avoidance of doubt, following the Deactivation Date, such Claims shall be subject to further conversions pursuant to any applicable Distribution Cryptocurrency Conversion Table in connection with subsequent distributions."

Pure Custody is just that – Pure, that never interacted with the debtor's Earn or Borrow programs. My funds were that, and Celsius has contravened it's own agreements and the Court has erred in accepting that. I had zero preference exposure. All similarly situated creditors received 100%.

# VIII

# <u>**The Bankruptcy Court**</u>

# <u>**erred in not following precedential conversion**</u>

1. In ECF#2666, LUNA/TERRA was converted, pursuant to the Custody Settlement

2. This conversion, was the following (Page 2/3)

"PLEASE TAKE FURTHER NOTICE that, as permitted by Section 8 of the Settlement Agreement, on or after June 1, 2023, the Debtors will make any in-kind distributions of Custody Settlement Payments (as defined in the Settlement Agreement) that would have otherwise been made in LUNC or UST in an alternative Cryptocurrency. Any distribution made in alternative Cryptocurrency shall be converted using the value of the original digital asset as of the Petition Date in U.S. dollars, which will then be converted into alternative cryptocurrency using the value of such *digital* asset as of the date of entry of the Custody Settlement Order.

### <u>Discussion on Precedent</u>

The agreement is that for any reason, if Celsius could not do in-kind distributions (including shutting down the application, and destroying all CEL Tokens, as the debtors have), the conversion is set. Nonwithstanding this, Celsius changed this agreement days before trial. In my personal scheduled claim of over a million dollars, most of my claim is in CEL Token. The conversion is in the millions, which was stripped from me days before trial, contravening precedent and the Settlement conversion.

# *IX*

# <u>**The Bankruptcy Court has shown bias**</u>

1. The Bankruptcy Court has shown bias and rulings in favor of Celsius.  See ECF#4827, Order of District Judge Colleen McMahon, indicating "Judge Glenn applied a manifestly erroneous standard, based on a far too narrow reading – indeed, an effective re-writing", vacating an order.

3. The Court permitted submission of Celsius' exhibits past the submission deadline, overruling my objection. Apparently these exhibits had my alleged tweets and voting record, which was never shared with me. See ECF3881 Page 1127.

2. In my attempts to use exhibits of the criminal transcript of Sam Bankman-Fried, the Court did not permit me to. See Page 1289.

3. The Court questioned me and asked for my personal whereabouts as it relates to my jurisdictional objection, and then indicated I would not be affected by it, ignoring  Celsius' and the Committees brief that they were destroying all CEL Tokens and were unable to distribute it. See ECF#3999, Page 117.

## Discussions on Prejudice and Bias

An Impartial arbiter is critical to any matters presented before it. Judge Glenn indicated the CEL Token dispute should be a "fair fight", yet ignored the changes to the Plan, which contravened it's own deadlines. Judge Glenn re-wrote the definition of "Any", which was present on the Custody Settlement, and shockingly, by Celsius' own addition of voting instructions to the 6B class, which contradicts voting classes and removes the right to reject, *after* the tabulation results were seen and published, and well after the Court's order as it relates to approving the classes. Judge Glenn re-wrote and re-interpreted the debtors' own tabulated results, which clearly indicated my right to reject.

The Court also re-wrote the meaning of "Except" in the CEL Token Settlement, which exempted Custody claims from the 0.25 cent valuation. This was solicited and directed by the Court to be 0.81 cents. In a shock to the conscious, Celsius changed the tabulation results to 0.25 cents, and ignored Court orders. The Plan itself indicates certain Jurisdictions are not able to receive distributions in kind, which Celsius admitted to in their Brief. The Committee also echoed this, and indicated "other than Custody Claims" in their brief. Judge Glenn ignored this, and re-wrote the Settlement agreement, the precedent in conversion, the Plan, and the Constitution.

Furthermore, Celsius engaged in Ex-Parte communication, which included providing Judge Glenn my alleged tweets and voting results, which were not shared with me, even upon request.  The influence and attack to the integrity of the judicial process has been fraudulently subverted, which has affected the rights of thousands of creditors, is evident. It is my belief these Ex-Parte communications were the tip of the Iceberg, and many such communications occurred. The process has been corrupted, and the safeguards provided by the Constitution and prior orders have been subverted.

The instance of ignoring Court orders extends to the Court's orders on public transcripts. The Court had requested Celsius to make available for the public the full transcripts for the CEL Token Hearing and the Confirmation hearing. While Celsius complied the initial order posting transcripts, they did not comply with the rest of the hearings – October 30, 2023 or the Confirmation Order hearing in November of 2023. I supplied to the public the transcript to the docket at my own expense (ECF3999).

# X

## The Bankruptcy Court Erred in Impairment

## regarding distribution of CEL Token

1. After the Disclosure statement was approved, Celsius indicated in their Memorandum of Law (ECF3431) they are not able to distribute CEL Token in Kind, and indicated they would destroy it all on effective day.

2. The Committee confirmed this. See ECF3432, Page 22/47.

"The Celsius platform will be retired following the conclusion of these Chapter 11 Cases. The CEL Token will have no go-forward utility. Ferraro Decl. ¶ 26. Moreover, the Debtors cannot and will not distribute CEL Token under the Plan. See Plan, Art. I.142 (defining Liquid.

Cryptocurrency to include only BTC and ETH)"

3. The Plan and Celsius confirmed that the ultimate conversion of Custody assets will be to BTC or ETH.

4. The Plan and Celsius also confirmed that certain jurisdictions also an only receive cash.

## Discussion on CEL Token Distribution

Indeed, the Debtors and Committee confirmed that CEL Token cannot be distributed. They admitted that they will be burning all CEL Tokens in their possession (including Custody CEL Token, which is in their possession, per plan), on effective day, and shutting down the application, affirming shortfall of an asset they cannot return.

CEL Token cannot be distributed by Celsius' own admission, which was echoed by the Committee. The Custody classes and creditors that were affected (approximately 3200) were not changed to impaired. All methods of distribution must meet the agreed upon terms and satisfy best interests. After the Plan was approved, this was disclosed and then a price assigned after tabulation was concluded, which contravened Court orders and creditor's rights and recovery. The plan even indicates jurisdictions where Custody assets will be converted (See Hawaii in the Plan).

# XI

## The Bankruptcy Court Erred in not addressing
## a protective order violation, my experience

1. On ECF 910, the Court entered a protective order, sealing residences and email addresses.

2. In my experience after I began questioning contradictions and my dissent with the plan, I started obtaining communications which I interpret to be threatening, intimidating, and harassing.

3. I reported this to law enforcement, Celsius, the Committee, and the Court.

3. Ignoring my reports, Celsius submitted a transcript to the docket, wilfully posting a family residence address of mine. ECF#3871.

4. Subsequently, this was served to the *entire* service list by Stretto.

5. In an email to those scheduled for hearings on October 24, 2023, the Court emailed everyone scheduled *without* blind carbon copying everyone, revealing everyone's individual emails.

**<u>Discussion on my Experience</u>**

It has always been my understanding that the Constitution allows Citizens of this great country the right to be heard, present legal arguments and theory, along with whistle-blow what I see as a manifest injustice violating the rights of Creditors, without retaliation.

In my experience, I have been explicitly targeted being the top CEL Token Holder in the Custody Class. I have been targeted for exercising my right to be heard and fight for my best interests and the agreements I have made. Above all, targeted for following the Constitution, which bestows rights and privileges that cannot be taken away or re-interpreted by anyone. My rights were trampled on, along with the rights of so many other victims of a fraudulent company. I have had communications directing me to the docket (where my family address was posted, before being removed). I have engaged in discussions with other creditors, who I now suspect some of which were not actually creditors. I have had devices compromised, login attempts from multiple jurisdictions on several of my accounts. I have had foreign browsing history added to one of my devices. I have had my vehicle remotely controlled (I have a Police Report and the Police from my understanding has a body cam Recording of this incident). I have had trespassers on family property, followed by communications of my location. I have been threatened with internment for my dissent. This is only a portion of the harassment I have endured.

Judge, I am mortified to know that anyone could modify my browsing history, or remotely control my vehicle. I am hoping the great men and women in our law enforcement and intelligence communities determine who is doing this sort of targeting. I want it on the record that I live reclusively, in fear for my safety.

The stakes in this case is high, involving billions of dollars and the top firms in the world, that does not permit such methods deployed against those pursuing the rights afforded to them by the Constitution. I was defrauded by a fraudulent company --- which fabricated evidence against Court Order and re-wrote terms, including the tabulation results.

# XII

## **The Bankruptcy Court Erred in not addressing the movement of 500,000 CEL Tokens which Celsius never obtained permission for**

1. My experience with CEL Token extends prior to Bankruptcy, which I had an error indicating there was "not enough funds" to move my CEL Token.

2. This error continued throughout the Bankruptcy. I attempted to solicit an alternative Cryptocurrency as called for by the Settlement, but my calls were met with silence.

3. Custody Class Counsel brought up Breach when I brought it to his attention, before going silent to my requests and inquiries.

4. The Blunstein Declaration (ECF 1531), confirms Celsius did not have adequate assets in comparison to it's liabilities to satisfy my withdrawal request.

5. It was not until Celsius moved 500,000 CEL Tokens from an unknown wallet, and subsequently pushed to my personal wallet, less than 90 minutes later.

6. Celsius confirmed in their Supplemental Memorandum (ECF#3864) that I withdrew the CEL Token I was eligible to withdraw at the time.

> "To date, Mr. Kirsanov has withdrawn all withdrawal-eligible CEL Token from his Custody account. On May 11, 2023, Mr. Kirsanov withdrew 25,000 CEL Token. On May 24, 2023, Mr. Kirsanov withdrew his remaining 246,585 withdrawal-eligible CEL Token. Mr. Kirsanov has approximately 477,000 CEL Tokens remaining in his Custody account."

7. I moved for the court to address and enforce the contract and the appropriate conversion value to be returned, in ECF#3878.

8. The Court ignored my pleas and manifest proof with public record that Celsius moved this, without obtaining Court order.

9. Upon clarification, Celsius admitted that only the confirmation order allowed them to sell or trade any such Cryptocurrency as necessary to rectify the Shortfall. See ECF#4014, Page 13.

**Discussion on the Shortfall**

Celsius had 1,210,940 CEL Token on the Custody platform. However, the total liabilities were 3,685,8651, creating a shortfall.  This is only about 32.5% of assets that could of been accounted for, where initial withdrawals demanded over 36.25% to satisfy all Custody liabilities at the time. I had the monetary majority of CEL Token in Custody --- approximiately 750,000 tokens. The tokens that were forced on to me were transferred from an unknown location and is likely not even my property.

Further, Celsius has admitted to destroying all CEL Token on effective day, creating a shortfall. They further shut down their application, preventing any withdrawals in-kind.


# XIII

## The Bankruptcy Court erred in sealing

## and not unsealing items as it related to

## CEL Token Legal issues

1. The Court has granted Ex Parte motions. See ECF#3559, ECF#3228 as examples.


**Discussion on Ex-Parte Unsealing**

Ex Parte communications erode the integrity and transparency of the judiciary. Accordingly, any information the Court has as it relates to CEL Token and related arguments, should be fully unsealed for the public.

# XIV

## *There was Manifest Injustice and Inequality*

## *to CEL Token Holders,  the Bankruptcy Court erred.*

*The facts, any only that, point to a manifest injustice.*

First, it is clear Celsius disregarded it's own guidelines that it solicited. From the tabulation results being fabricated against Court order, where ballots did not match the tabulation values, to the guidelines established.

Second, it is clear Celsius and the Committee clearly and communicated that CEL Token could not be returned, but only after the Court approved the disclosure statement. They clearly indicated the destruction of CEL Token on effective day, making it impossible to distribute. Even the Plan shows a difference in distribution and an impossibility from certain jurisdiction to others (See Hawaii). There must be equality.

Third, it is clear Celsius changed voting instructions *after* the tabulation results, along with forcing the Custody Class into the CEL Token Settlement, even though it clearly says such claims are exempt.

Fourth, if certain Custody claims are unimpaired (Pure Custody), then they must receive their petition day prices, converted pursuant to precedent.  In a swift change in the contract creditors voted on days before trial, Celsius affected the rights and recoveries of 88 Pure Custody Holders, and approximately 3200 creditors. In an extraordinary showing, I was able to irrefutably prove the facts that Celsius misrepresented to the Court.

Fifth, there was wilful omissions that were ignored by the Court. It was never a "fair fight" for Custody holders that were impaired after the tabulation results were published, preventing them due process.

Sixth, In re-interpreting the tabulated results, re-writing the definition of "Any", and "Except Custody Claims", and ignoring precedent, the Bankruptcy Court has shown bias.

# XV

## **The Plan and the Releases were Coercive and non-consentual, violating the Constitution and the privileges and immunities afforded by it.**

The Constitution is the law of the land. There is no one that can circumvent that under any circumstance. Here, there have been many changes that I have not consented to, and have violated my Constitutional rights.

Under US 1109, any party in interest, may raise and may appear and be heard on any issue in a case under this chapter. I was not allowed to be heard in the initial objections, as the changes in question and the tabulation was impossible to object to in a timely manner. Furthermore, on the subsequent hearing, the Court did allow me to speak and slotted me in last at my request. I was not given adequate notice to properly prepare and object to this change. This goes on US 1128 too, as the Confirmation hearing affords the rights to any party in interest to object.

Under US 1124, the impairment of the Plan to Custody CEL Token holders is clear. This contravenes "Pure Custody" CEL Token holders by assigning 0.25 cents, which changes the original right of a CEL Token or petition day price. The Token has been destroyed, and unable to be distributed, as per the debtor's own admission after the approval of the disclosure statement. The conversion was not honored.

Under US 1125, solicitation is to be clear and adequate. The Court indicated in it's most recent ruling that the terms could of been clearer. Not only could it have been, but it is called for by the Constitution to be clear, and not to have voting instructions added after the tabulation results, which change the rights of 88 Pure Custody creditors. There was not adequate information provided, and it was wilfully done so with the voting instructions added after tabulation. Resultant of these, it was not done in good faith, rewriting the Court's own orders. Accordingly, the 88 people that had the language of "Any" rewritten after the tabulation results were prejudiced.

20

Under US 1126, it indicates that a party of interest may bring up that solicitation was done in good faith. Not only was it not done in good faith, but solicitation went against Court Order, defrauded 3200 Custody creditors, and changed the recovery for 88 Pure Custody creditors. The Bankruptcy Court never addressed this, and quelled my dissent which I could not timely object to.

Under US 1127, the Plan may be modified anytime before confirmation, but it may not be modified that it fails to meet US 1122 and US 1123, which indicate that there would be classes of claims that a plan shall have, with their treatment. This treatment was changed after tabulation. The 88 Pure Custody holders were very clearly assigned to class 6B, contravening their 6A ballots. The change after the tabulation results were clear. Celsius obtained contradictory orders, and defrauded the Court by indicating I was not Pure Custody (which is false), and changed violated Constitutional rights and recoveries. At no point did I agree to a less favorable treatment, and this discriminates against similarly-situated creditors.

US 1129, Accordingly, the Confirmation defrauded the Bankruptcy Court, creditors, and the integrity of the process by making changes and omissions not consistent with Celsius' statements. The Plan, today, has many standing contradictions that have been re-written at the expense of creditors.

I, and many others never consented to this change, and were forced into non-consensual releases that modified recoveries and the expectations creditors had.

[Page Intentionally Left Blank]

# <u>Closing Statement</u>

This situation should have never happened. In an extraordinary method, I was able to determine exactly what my vote was in the Custody Class on the tabulation results, contrary to Celsius' claim of my voting in favor of the plan for the class. Celsius further defrauded and mislead the Court by omitting that I was not really Pure Custody, indicating I was able to withdraw that if I was under a set preference exposure. My preference exposure was zero. The Custody Settlement had no such deemed to accept mechanic, and precedent was not followed.

The Bankruptcy Court ignored several key aspects here – it's own scheduling guidelines of modification deadlines, the application of "any", the application of "except Custody Claims" provision in the CEL Token Settlement, and Celsius' and Committee's own briefs *after* the disclosure statement was approved. Shocking, the tabulation was modified against Court order, where Custody holders indeed received full 0.81 cent ballots exempting them from the 0.25 cent valuation.

The integrity of the process has been fraudulently subverted, and this change has affected thousands of creditors. I happened to be the one most monetarily affected by it. The Court subsequently was not able to perform its function as a neutral arbiter of justice, and the impartial nature of the Court was corrupted.

Attorneys, as officers of the Court, have duties to the Constitution and honesty towards the court. Here, that duty was neglected and Judgements were obtained that defraud Court Orders and the Constitution. As shown, there have been material misrepresentations that have obtained Judgements.

The Debtor in Possession is not just a fiduciary to its creditors but the Bankruptcy Court itself, and has the responsibility to act in the best interests of the estate, and bears a special responsibility for the proper functioning of the machinery of justice. Celsius has failed to do so. In situations where the Celsius has represented transactions as an arms-length transactions, such as the many settlements they have entered into, were merely a self-dealing scheme to push the Plan through, as many have

been submitted under seal and unknowingly to the general creditors.

In my forthcoming motion for intervention and relief by the District Court, I will ask the Court to intervene in this manifest injustice. I will ask the District Court to right a great series of wrongs, that have caused great prejudice to the Estate, along with tarnishing of the integrity of the Judicial process. That have cast a shadow on the confidence of voting results, and those that have interpreted them at the cost of victims. There have been gross and wilful violations of Constitutional Rights and recoveries of victims of fraud, which I hope the Court will see past the veil of shadow and corruption that has been cast. I have done everything in my power and understanding to make myself heard and make known this injustice, and to continue to exercise my rights in this appeal.

Thank you very much.

Dated: September 18, 2024.

I stay respectfully,

/s/ Dimitry Kirsanov

Dimitry Kirsanov, Pro Se Creditor